**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | |
| Plaintiff, | 8:18CV185 |
| vs. | |
| JOSE M. PALOMARES and TERESA C. PALOMARES, individually and d/b/a PALETERIA Y RESTAURANT SAN LUIS a/k/a RESTAURANT SAN LUIS, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on the Motion for Default Judgment, ECF No. 14, filed by Plaintiff J & J Sports Productions, Inc. (J&J). For the reasons stated below, the Motion will be granted.

## BACKGROUND

The following facts are those alleged in the Complaint, ECF No. 1, and unchallenged by the Defendants.

On April 23, 2015, J&J entered into a contract with Mayweather Promotions, LLC, and Top Rank, Inc., for the exclusive commercial, closed-circuit distribution rights to "'The Fight of the Century' Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program" (the Program) in the United States on May 2, 2015. J&J then contractually sublicensed the right to exhibit the Program publicly to various commercial establishments throughout the United States. On May 2, 2015, the day the Program aired live on television, Defendants Jose and Teresa Palomares intercepted and broadcasted, or directed or permitted their employees to intercept and broadcast, the Program at their

restaurant, Paleteria y Restaurant San Luis a/k/a Restaurant San Luis (the Restaurant). Attached to the Complaint is an affidavit wherein the affiant states he observed a portion of the Program being televised at the Restaurant. ECF No. 14-3, Page ID 57.

On April 27, 2018, J&J filed its Complaint alleging the Defendants willfully violated 47 U.S.C. §§ 553[1] and 605[2]. The Defendants did not answer or otherwise respond to the Complaint and on July 26, 2018, the Clerk entered default against the Defendants under Fed. R. Civ. P. 55(a). Under Fed. R. Civ. P. 55(b), J&J moved for default judgment requesting damages in the amount of $60,000, plus costs and attorney fees.

## DISCUSSION

---

[1] "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

[2] Section 605 provides:

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

2

It is "appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Inman v. Am Home Furniture Placement, Inc.*, 120 F.3d 117, 119 (8th Cir. 1997)). "[W]hen a default judgment is entered, facts alleged in the complaint may not be later contested." *Marshall*, 616 F.3d at 852 (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)). It is, however, "incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment." *Marshall*, 616 F.3d at 852-53 (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)).

J&J's Complaint asserted claims under both 47 U.S.C. §§ 553 and 605, alternatively, but its Motion seeks a default judgment and damages under § 605 exclusively. *See Joe Hand Promotions, Inc. v. Peterson*, No. 8:12CV241, 2014 WL 824119, *4 (D. Neb. March 3, 2014) (explaining § 553 applies to cable transmissions, § 605 applies to radio and satellite transmissions, and that the two sections are mutually exclusive for purposes of recovery). According to the unchallenged facts, Defendants displayed the Program via satellite television in the Restaurant on May 2, 2015, without authorization or approval from J&J, and they personally supervised, controlled, and financially benefitted from the Restaurant. *Joe Hand Promotions, Inc. v. Moore*, Case No. 4:15-cv-4082, 2017 WL 741009, at *2 (W.D. Ark. Feb. 24, 2017) (citing *Joe Hand Promotions, Inc. v. Shepard*, No. 4:12CV1728 SNLJ, 2015 WL 1976342, at *8 (E.D. Mo. April 30, 2015) (explaining that to prove a § 605 violation, plaintiffs must show that the event or program at issue was exhibited in the defendant's establishment without authorization); *See Comcast of Illinois X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 947 (8th Cir. 2007) (discussing an individual's personal liability under § 553). As such, the

3

Court finds that the unchallenged facts constitute a legitimate cause of action under 47 U.S.C. § 605.[3] The Court must, therefore, determine the appropriate amount of damages to which J&J is entitled thereunder.

J&J seeks statutory damages, "enhanced" damages, and its costs and attorney fees. The Court will address each in turn.

**I. Statutory Damages**

Section 605(e)(3)(C)(i) provides:

> Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
> **(I)** the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> **(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

---

[3] The Court notes that J&J's claim would likely be barred under a limitations period shorter than three years. In *Comcast*, however, the Eighth Circuit declined to decide whether the three-year limitations period associated with federal copyright law or the eighteen-month limitations period associated with Nebraska's antipiracy statute applies to claims under the Communications Act of 1934. 491 F.3d at 943 (recognizing a circuit split on whether state antipiracy law or federal copyright law applies). Although it may, the Court is not obligated to raise the statute of limitations *sua sponte*. *Day v. McDonough*, 547 U.S. 198, 205 (2006) ("[C]ourts are under no obligation to raise the time bar *sua sponte*."); *Buckley v. Ray*, 848 F.3d 855, 867 (8th Cir. 2017) (affirming district court's decision to dismiss claims sua sponte because they were time barred). The Court will not raise this issue here because it is unclear which limitations period applies and the parties have not briefed this issue. Further, given the Defendant's failure to defend against the claims in this case, it is unlikely they would respond to any supplemental brief submitted by J&J on this issue.

J&J elected statutory damages for a single violation. According to J&J, it would have cost $3,000 for the Defendants to lawfully display the Program, and the Defendants imposed a $30 cover charge on May 2, 2015, which was paid by at least 32 patrons. Under these circumstances, the Court finds that statutory damages in the amount of $3,960—the amount it would have cost to lawfully display the Program plus the amount paid in cover charges by patrons—is just. *Moore*, 2017 WL 741009, at *2 ("[T]he amount Moore should have paid for a sublicensing agreement is the proper amount of statutory damages."); *J & J Sports Prods., Inc. v. Main Hookah Lounge, LLC*, No. 14-cv-01075-W-DGK, 2015 WL 6457300, at *4 (W.D. Mo. Oct. 26, 2015) (accounting for an establishment's cover charge when determining statutory damages); *Joe Hand Promotions, Inc. v. Thompson*, No. 4:11-CV-1740 CAS, 2013 WL 466278, at *3 (E.D. Mo. Feb. 7, 2013).

**II. Enhanced Damages**

Section 605(e)(3)(C)(ii) provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

"Willfulness is 'disregard for the governing statute and an indifference to its requirements.'" *Comcast*, 491 F.3d at 947.

Because the Restaurant imposed a $30 cover charge and because the interception of a closed-circuit broadcast requires intentional, rather than accidental, acts, the Court finds that the violation was committed for financial gain and that the commission was willful. *Joe Hand Promotions, Inc. v. Dalal*, Case No. 6:15-cv-6067, 2016 WL 3748516,

at *3 (W.D. Ark. July 11, 2016) (*quoting J & J Sports Prods., Inc. v. Diaz De Leon*, No. 2:11-CV-02051, 2012 WL 79877, at *3 (W.D. Ark. Jan. 11, 2012) (explaining "intentional acts are required to pirate a closed-circuit broadcast" and that "courts may draw an inference of willfulness from a defendant's failure to appear and defend" against allegations of willful conduct). Thus, J&J is entitled to enhanced damages under § 605(e)(3)(C)(ii).

"The purpose of these enhanced damages is to punish violations and simultaneously deter future piracy." *Moore*, 2017 WL 741009, at *3 (citing *J & J Sports Prods., Inc. v. Brewster "2" Café, LLC*, No. 4:11-cv-00690-SWW, 2014 WL 4956501, at *5 (E.D. Ark. Oct. 2, 2014)). "In determining the appropriate amount to be awarded, courts typically consider whether there have been 'repeated violations over an extended period of time,' whether the defendant advertised the event or charged a cover charge, the amount of the defendant's gain, and other similar factors." *Joe Hand Prods., Inc. v. Feil*, Civil No. 12-CV-1603 (SRN/AJB), 2013 WL 2936389, at *2 (D. Minn. June 14, 2013) (internal quotation omitted). The Defendants have no history of prior violations, they did not advertise the event, the Restaurant was at less than 50% capacity, and the cover charge was accounted for in the award of statutory damages. Thus, the Court finds that the violation was not particularly egregious and that an award of enhanced damages in the amount of $1,980—one half the amount of statutory damages—is sufficient to punish the committed violation and to deter future violations.

### III. Costs and Attorney Fees

Section 605(e)(3)(B)(iii) states "[t]he Court shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." J&J

6

did not provide the Court with any evidence of its costs and attorney fees but requested fourteen days from the entry of judgment to submit a separate motion for costs and attorney fees. Pursuant to Fed. R. Civ. P. 54(d), the Court will grant J&J's request.

Accordingly,

IT IS ORDERED:

1. The Motion for Default Judgment, ECF No. 14, filed by Plaintiff J & J Sports Productions, Inc., is granted;

2. Plaintiff J & J Sports Productions, Inc., is awarded damages in the amount of $5,940;

3. Defendants Jose M. Palomares and Teresa C. Palomares are jointly and severally liable for the damages awarded to Plaintiff J & J Sports Productions, Inc.;

4. Plaintiff J & J Sports Productions, Inc., may submit a separate motion for its costs and attorney fees on or before October 30, 2018; and

5. A separate judgment will be entered.

Dated this 15th day of October, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge